**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MARCUS PINKNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| TBC CORPORATION | ) | **JURY TRIAL DEMANDED** |
| Serve: Corporation Service Company | ) | |
| 1201 Hays Street | ) | |
| Tallahassee, FL 32301 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NATIONAL TIRE AND BATTERY | ) | |
| SERVE: | ) | |
| 4280 Professional Center Dr., Suite 400 | ) | |
| Palm Beach Gardens, FL 33410 | ) | |
| | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Marcus Pinkney, states and alleges as follows:

**NATURE OF THE CASE**

1.     This is a class action for breach of warranty and violation of the Magnuson-Moss Warrant Act ("MMWA"), breach of the Kansas and Missouri Implied Warranty of Merchantability K.S.A. § 84-2-314 *et seq.* and RSMo. § 400.2.314, Violations of the Kansas Consumer Protection Act ("KCPA"), and Violations of the Missouri Merchandising Practices Act ("MMPA") against TBC Corporation ("TBC") and National Tire and Battery ("NTB").[1]

---

[1] For convenience, this Complaint generally refers to both TBC and NTB collectively as NTB, unless specifically noted.

2.      Defendants have routinely sold tires to consumers in the states of Kansas and Missouri without properly identifying the Department of Transportation Tire Identification Number ("TIN") in Defendant's invoices at the time of sale.

3.      Federal law requires that manufacturers include standardized information permanently branded on the sidewalls of all tires sold in the United States, including the tire's basic characteristics, capacities, and construction, as well as the TIN, which is used for safety-standard certification and to identify recalled tires.

4.      The TIN is not only used in identifying recalled tires but is also used in determining whether a tire is covered by a warranty. When a tire is sold, the TIN is sent to the Department of Transportation. If the TIN listed in the invoice does not match the TIN on the tire, no warranty claims can be made.

5.      Defendants are independent tire dealers and/or distributors, meaning the business is not owned or controlled by a tire manufacturer or a brand-name owner. *See* 49 C.F.R. § 574.3(c)(1).

6.      As an independent tire dealer/distributor, Defendants are required to do one of the following each and every time it sells tires:

    a.   Provide each tire purchaser with a paper tire-registration form to send to the tire manufacturer at the consumer's expense, upon which the independent tire dealer has recorded the entire TIN of each tire sold or leased to the tire purchaser, along with the independent tire dealer's contact information. The tire purchaser needs to add his or her name and address to the form and mail it to the tire manufacturer or the tire manufacturer's designated agent to complete the tire registration process;

b.   Record the following information on a paper tire-registration form and return that form to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within thirty (30) days of the date of sale or lease: (i) the purchaser's name and address, (ii) the entire TIN(s) of the tire(s) sold or leased to the tire purchaser, and (iii) the dealer/distributor's name and street address; or

c.   Electronically transmit the following information to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within thirty (30) days: (i) the tire purchaser's name and address, (ii) the entire TIN(s) of the tire(s) sold or leased to the tire purchaser, and (iii) the dealer/distributor's name and address. Dealers who select to electronically transmit the information must include a statement to that effect on the invoice and provide the invoice to the tire purchaser.

7.   Independent tire dealers like NTB are required by federal law to either (1) provide the tire purchaser with a paper tire-registration form containing the independent tire dealer's contact information and *the entire, federally mandated TIN for each tire sold* so that the purchaser can add his or her name and contact information to the tire-registration form and send it to the tire manufacturer, or (2) transmit that same information directly to the tire manufacturer for the purchaser, either in paper form or electronically. *See* 49 C.F.R. § 574.8.

8.   This federally required information plays a crucial role in the event of a safety recall or redemption of a warranty. In the event of a safety recall, this information enables the tire manufacturer to fulfill its statutory mandate to promptly notify the tire owner of that recall by first-class or certified mail, so that the consumer can replace his or her defective tires with non-

3

defective tires. If the tire manufacturer cannot reach consumers in the case of a recall, this unduly exposes them to serious injury or death.

9.      NTB's motivations in this regard are clear: by placing fictitious TIN numbers on customer invoices, NTB can avoid honoring warranty claims for faulty tires. This also makes it harder for consumers to identify recalled tires. Further, this allows NTB to purposefully offload tires that it knows are not fit for the particular purpose for which they are sold and, when the tires fail, no warranty claims can be made.

10.     This is precisely what happened to Plaintiff Marcus Pinkney. NTB knew when they sold Plaintiff tires that they did not have the requisite speed and load rating for the particular purpose that Plaintiff was purchasing them for. Plaintiff regularly travels long distances in his 2015 Chevrolet Silverado while hauling a RV trailer behind it.

11.     To prevent warranty claims from being made by the Plaintiff and other similarly situated individuals, Defendant NTB used a fictional TIN on two separate occasions when Plaintiff purchased tires from NTB.

12.     Plaintiff's tires inevitably failed.  Unfortunately, he was several hours away from home and near St. Louis, Missouri when they failed.  Plaintiff went to an NTB location to get them repaired/replaced, at which point NTB told him that the warranty claim was being denied because the TIN on the tires did not match the invoice and registration.

13.     Plaintiff, hours from home, was forced to purchase all new tires from NTB.

**PARTIES**

14.     Plaintiff Marcus Pinkney ("Marcus" or "Plaintiff") was a Kansas resident and consumer when he purchased, to be described in detail below, the tires at issue in this matter. He has since relocated to Nevada.

15.     Plaintiff brings this lawsuit against Defendant TBC Corporation d/b/a NTB Tire & Service Centers individually and on behalf of all other similarly situated consumers.

16.     Defendant NTB is a Delaware corporation with its principal place of business in Florida.  TBC Corporation d/b/a NTB Tire & Service Centers can be served by serving its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, Florida 32301.

17.     At all times relevant to these proceedings, Defendant was in the business of selling tires to individual consumers nationwide, including in the states of Kansas and Missouri.

## JURISDICTION AND VENUE

18.     Subject-matter jurisdiction in this Court is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that this putative class involves more than 100 members, some members of the proposed classes are citizens of states different from those of Defendant, and the amount in controversy exceeds $5,000,000, net of interest and costs.

19.     Alternatively, subject-matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because of Plaintiff's claims arising under the Magnuson-Moss Warranty Act.

20.     This Court has personal jurisdiction over Defendants because they conduct significant business in Kansas. Defendants voluntarily submitted to jurisdiction in Kansas when it engaged in substantial business activities in Kansas and purposefully directed its actions towards Kansas.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

22.     Defendants have over 1200 auto service centers nationwide.

23.     NTB provides a "New Tire Limited Warranty":

New Tire Limited Warranty

*What is covered and for how long;
Every new tire purchased at a Tire Kingdom, Merchants Tire, NTB or Big O Tires store (collectively 'TBC Retail') is warranted by the manufacturer against defects in workmanship or materials down to 2/32nds of an inch remaining tread groove depth. Additional warranties may apply to some tires. TBC Retail will honor the manufacturer's warranty on any such tires, and any such tires which fail under the terms of the manufacturer's warranty will be repaired or replaced in accordance with the manufacturer's warranty program. You must comply with the conditions of the manufacturer's warranty program to receive this warranty coverage.

24.     NTB's written warranty remedies defects in the tires under the same warranty as the manufacturer's warranty.

25.     The use of fictitious TINs on a purchase invoice at the time of sale gives NTB the ability to deny a warranty claim on the tires sold as they would be unable to match the tires to a sale to the individual.

## PLAINTIFF MARCUS PINKNEY

26.     On November 3, 2016, Plaintiff Marcus Pinkney purchased two tires from the NTB store in Overland Park (7953 W. 151st St., Overland Park, Kansas 66223) at a cost of $305.24.  Upon information and belief, that location has since rebranded to Big O Tires.

27.     The invoice listed the tires as two Nitto Crosstek SUV tires, with the following characteristic: P255/70R17 110S, 60,000 with a TIN of KVARCWM1216 2.

28.     A few months later, on March 11, 2017, Marcus purchased an additional set of tires from the same NTB location for $384.31.

29.     The invoice for the March 11, 2017 sale listed the two tires as Nitto Crosstek SUV tires, with the same characteristics as the November 3, 2016 tires, but with a TIN of KVARCWME2616 2.  These two tires were not replacements for the November 3 tires, but for the tires Plaintiff owned before then.

30.     Defendants did not comply with 49 C.F.R. 574.8(1), despite having the option of multiple ways to comply.  As outlined below, Plaintiff asked a separate NTB location to honor the warranty, but that request was denied, on the basis of the non-matching TINs.

31.     Marcus drives long distances in his 2015 Chevrolet Silverado while pulling an RV trailer behind his vehicle and knew that the tires had to be able to withstand the extra strain of hauling the trailer as well as the long miles he traveled.

32.     When purchasing the original set of tires on November 3, 2016, Marcus made sure to confirm with the agents of NTB that the tires he purchased would withstand such stress.

33.     On June 2, 2017, while traveling out of state, Marcus noticed the Nitto tires purchased on March 11 from NTB were missing chunks of rubber and the steel belts in the tires were showing.

34.     Believing that the tires were under warranty, Marcus took his Chevrolet Silverado and the tires to the nearest NTB location, at 700 S. County Center Way, Saint Louis, MO 63129.

35.     The manager of the St. Louis NTB looked up the purchase invoice from the March 11 sale of the tires and then inspected the defective tires.

36.     When the manager found that the TINs on the tires did not match the TINs on the invoice from the March 11 sale, she pulled the invoice from the November 3 sale and found that the TINs on all four tires were different from the TINs on the invoices.

37.     The manager informed Marcus that since the TINs did not match, NTB would not be honoring the warranty.

38.      Since the tires had failed far from home, Marcus was left with little choice but to purchase four all new tires, for $740.41.

39.     The tires purchased at the store in St. Louis were Nitto Crosstek Heavy Duty with the following characteristics: LT265/70R17E 121R; these, as stated, cost Marcus $740.41. Marcus purchased higher quality tires on this visit because the tires NTB had previously sold him were not rated for his vehicle.

40.     Denied the warranty that he should have been eligible for, Marcus contacted the National Highway Traffic Safety Administration ("NHTSA") to attempt to learn more about why the tires did not match.

41.     One of NHTSA's safety specialists, Kris Clausen, told Plaintiff that the TINs on his tires were legitimate but that the TINs on the invoices given to him by NTB were (in essence) fictitious. Mr. Clausen also informed Plaintiff that all Nitto Crosstek tire TINs begin with 73FLKV6, meaning that the TINs Defendants placed on the invoices are not even close to accurate.

42.     Mr. Clausen also informed Marcus that the tires originally sold to him at the Overland Park NTB did not have the speed and load rating necessary for Marcus' uses and needs.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff proposes that he represent the following Classes:

**Class:**

(a) The Nationwide Class, which consists of: All natural persons who purchased a tire, sold by defendant NTB, where the Department of Transportation Tire Identification Number on the tire did not match the Department of Transportation Tire Identification Number on the invoice of sale on or after November 1, 2014.

(b) The Kansas Sub-Class, which consists of: All natural persons within the state of Kansas who purchased a tire, sold by Defendant NTB, where the Department of Transportation Tire Identification Number on the tire did not match the Department of Transportation Tire Identification Number on the invoice of sale on or after November 1, 2016.

(c) The Missouri Sub-Class, which consists of: All natural persons within the state of Missouri who purchased a tire, sold by defendant NTB, where the Department of Transportation Tire Identification Number on the tire did not match the Department of Transportation Tire Identification Number on the invoice of sale on or after November 1, 2014

44.     For the purposes of the proposed class definitions, the "on or after" clause shall refer to the date of purchase, not the date of manufacture.

45.     Should the Court decide not to certify the Nationwide Class described above, Plaintiff seeks certification of the state sub-classes described above.

46.     Plaintiff proposes that the following persons shall be excluded from the proposed Class: (1) NTB and its subsidiaries and affiliates; (2) governmental entities; (3) the judge(s) to whom this case is assigned and any immediate family members thereof; (4) Plaintiff's counsel; (5) all persons who have previously settled these claims against Defendants.

47.     <u>Numerosity and Ascertainability.</u> The members of the proposed Class are so numerous that individual joinder of all members is impracticable.  Plaintiff believes the number of people who would be members of the proposed Class are in excess of hundreds, and quite likely thousands, of individuals. As the sale of tires is one of NTB's primary income focuses, NTB no doubt sells thousands of tires a year across the states of Kansas and Missouri, and far more throughout the rest of the country. The precise number of class members and their addresses are unknown to Plaintiff; however, this information would be readily available from NTB's records.  Further, the class definition is crafted using exclusively objective questions to determine membership, making the class easily ascertainable.

48.     <u>Commonality and Predominance.</u> This action involves common questions of law and/or fact that predominate over any questions affecting individual class members.  These common questions include, but are not limited to, the following:

> a.  Whether NTB has represented that tires being sold had uses that they did not have;
>
> b.  Whether NTB has and/or had a reasonable basis to rely upon in making the representations about the uses of such tires;

c.  Whether NTB has represented that tires were of a particular standard, quality, grade, style, and/or model;

d.  Whether such tires were in fact of that particular standard, quality, grade, style, and/or model;

e.  Whether NTB's representations as to the standard, quality, grade, style, and/or model of the tires were made knowingly or with reason to know;

f.  Whether NTB, in oral and/or written representation(s), employed exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s);

g.  Whether NTB's use of exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s) in oral and/or written representation(s) was willful;

h.  Whether NTB failed to state a material fact;

i.  Whether NTB concealed, suppressed, and/or omitted a material fact;

j.  Whether NTB's failure to state a material fact was willful;

k.  Whether NTB's concealment, suppression, and/or omission of a material fact was willful;

l.  Whether NTB took advantage of Plaintiff's and the members of the proposed Class' inability to protect their interests because of their ignorance of the law;

m.  Whether NTB has honored limited warranties on tires;

n.  Whether NTB is a merchant in goods of the kind;

o.  Whether NTB attempted to exclude, modify, or otherwise attempt to limit the implied warranties of merchantability and fitness for a particular purpose, as applicable;

p.  Whether NTB has honored the implied warranty of merchantability and fitness for a particular purpose as applicable;

q.  Whether Plaintiff and the members of the proposed Class are entitled to damages;

    and,

r.  In what amount Plaintiff and the members of the proposed Class are entitled to damages.

49.    <u>Typicality.</u> The named Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff purchased tires from NTB that had TINs that did not match the fictitious TINs on the purchase invoice, which led to Plaintiff's warranty claims being denied.

50.    <u>Adequacy of Representation</u>. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent. Additionally, he has retained counsel competent and experienced in complex consumer class action litigation.  Plaintiff intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

51.    This case can properly be maintained as a class action pursuant to FRCP 23(b)(3) because the common questions of law and/or fact predominate over the individual questions and because a class action is superior to all other available means for the fair and efficient adjudication of the claims.

52.    <u>Superiority.</u> A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff and the Class members' claims.  Because of the relatively modest size of each individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein on an individual basis. Absent a class action, the members of the proposed Class would not be likely to recover, or would not likely have the chance to recover, damages and/or restitution, such that NTB would be permitted to retain the proceeds of its unlawful conduct.

**COUNT ONE:**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
Plaintiff and All Class Members

53.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

54.     Plaintiff is a "consumer," as defined by 15 U.S.C. § 2301(3).

55.     Each member of the proposed Class is also a "consumer," as defined by 15 U.S.C. § 2301(3).

56.     NTB is a "supplier" and a "warrantor," as defined by 15 U.S.C. § 2301 (4) and (5).

57.     The tires NTB sold Plaintiff (and the proposed Class members) are each a "consumer product," as defined by 15 U.S.C. § 2301 (1).

58.     The "New Tire Limited Warranty" NTB provided to Plaintiff was a "written warranty," as defined by 15 U.S.C. § 2301(6).

59.     Each member of the proposed Class was also provided with a "written warranty" which was the same as and/or materially indistinguishable from the one provided to the named Plaintiff.

60.     The "New Tire Limited Warranty" provides for remedying all defects in the tires that fall within the scope of the warranty.

61.     NTB's use of fictitious TINs on the purchase invoices at the time of sale have allowed NTB to circumvent their own written warranties as well as implied warranties pursuant to Kansas and Missouri law.

62.     In doing so, Defendant has violated the Magnuson-Moss Warranty Act ("MMWA") by failing and/or refusing to honor written warranties and implied warranties pursuant to Kansas and Missouri law (and, upon information and belief, the laws of every other state in which NTB conducts business).

63.     As a direct and proximate result of NTB's breach of express and implied warranties, Plaintiff and each member of the proposed Class have been financially damaged.

64.     Plaintiff is authorized to bring this action individually by 15 U.S.C. § 2310(d).

65.     Plaintiff is also authorized to bring this action as a class action by 15 U.S.C. § 2310(e).

66.     Plaintiff hereby gives notice to NTB that he is acting on behalf of the proposed Class and hereby requests that Defendant honor its written warranties, both individually and on behalf of all class members.  Plaintiff's first notice to NTB, for the purposes of 15 U.S.C. § 2310(e) was provided on June 2, 2017, when Plaintiff attempted to have the warranty honored at NTB's St. Louis, Missouri location, as described above.

67.     Plaintiff and all Class Members are authorized to recover their actual damages by 15 U.S.C. § 2310(d)(1). In this case, those actual damages include the cost of replacing the failed tires.

68.     Plaintiff and the Class Members are also authorized to recover their reasonable attorneys' fees by 15 U.S.C. § 2310(d)(2).

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, for their reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## <u>COUNT TWO:</u>
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### Plaintiff and All Class Members

69.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

70.     NTB is a "merchant" with respect to goods of the kind. *See* K.S.A. § 84-2-104(1) and K.S.A. § 84-2-314(1). *See* RSMo. § 400.2.104(1) and § 400.2.314(1).

71.     By selling tires, Defendant delivered and/or sold goods to Plaintiff and the members of the proposed Class.

72.     Pursuant to K.S.A § 84-2-314 *et seq.*, a merchant of a particular good is in breach of Kansas' implied warranty of merchantability if goods are sold that are not adequately labeled or fail to conform to the label. Merchants are in breach of Kansas' implied warranty of fitness for a particular purpose if the seller is aware of the particular purpose for which the goods are being sold and the buyer is relying on the seller's judgment to select suitable goods.

73.     Pursuant to RSMo. § 400.2.314 *et seq.*, a merchant of a particular good is in breach of Missouri's implied warranty of merchantability if goods are sold that are not adequately labeled or fail to conform to the label. Merchants are in breach of Missouri's implied warranty of fitness for a particular purpose if the seller is aware of the particular purpose for which the goods are being sold and the buyer is relying on the seller's judgment to select suitable goods.

74.     Plaintiff hereby gives notice to NTB that he is acting on behalf of the proposed Class and hereby requests that Defendant honor its written warranties, both individually and on behalf of all class members.  Plaintiff's first notice to NTB, for the purposes of 15 U.S.C. § 2310(e) was provided on June 2, 2017, when Plaintiff attempted to have the warranty honored at NTB's St. Louis, Missouri location, as described above.

75.     The tires Defendants sold Plaintiff in this case were not "merchantable," as described in K.S.A. § 84-2-314(2)(e) and K.S.A. § 84-2-314(2)(f). *See* RSMo. § 400.2.314(2)(e) and RSMo. § 400.2.314(2)(f).  As noted above, they were not rated for Plaintiff's vehicle.

14

76.     Defendant's failure to honor the implied warranty of merchantability breaches the warranty.

77.     As a direct and proximate result of the defect(s) described herein and the Defendant's failure to remedy the problems, Plaintiff and all members of the proposed Class have been financially damaged.

78.     Plaintiff and proposed Class members' damages include, but are not limited to, the expense of replacing the failed tires.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, prays for judgment against Defendant in such amounts as are allowed by law and to be determined at trial, for their actual damages, incidental damages, compensatory damages, consequential damages, pre- and post-judgment interest at the greatest rate allowed by law for their costs and reasonable attorneys' fees, and for any such further relief as may be just and proper under the circumstances.

## COUNT THREE:
### BREACH OF THE IMPLIED FITNESS FOR A PARTICULAR PURPOSE
Plaintiff and All Class Members

79.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

80.     Plaintiff confirmed with agents of NTB that the tires he purchased would withstand the stress of hauling his RV trailer across long distances.

81.     Merchants are also in breach of Kansas' implied warranty of fitness for a particular purpose if the seller is aware of the particular purpose for which the goods are being sold and the buyer is relying on the seller's judgment to select suitable goods.

82.     Under Missouri law, a seller of a particular good, like NTB, is in breach of Missouri's implied warranty of merchantability if goods are sold that are not adequately labeled or fail to conform to the label.

83.     Merchants are also in breach of Missouri's implied warranty of fitness for a particular purpose if the seller is aware of the particular purpose for which the goods are being sold and the buyer is relying on the seller's judgment to select suitable goods.

84.     Defendant, through its agents, was aware of the particular purpose for which the goods were being sold. *See* K.S.A. § 84-2-315 and RSMo. § 400.2.315.

85.     Plaintiff relied on NTB's agents' skill and judgment to select suitable goods for the purpose required. *See* K.S.A. § 84-2-315 and RSMo. § 400.2.315.

86.     The tires in this case were not fit for the particular purpose for which the goods were acquired, in that they were not rated for Plaintiff's vehicle.

87.     The Defendant's failure to honor the implied fitness for a particular purpose breaches the warranty. K.S.A. § 84-2-315 and RSMo. § 400.2.315.

88.     As a direct and proximate result of the defect(s) described herein and Defendant's failure to remedy the problem(s), Plaintiff and all members of the proposed Class have been financially damaged.

89.     Plaintiff and the proposed Class members' damages include, but are not limited to, the expense of replacing the failed tires.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, prays for judgment against Defendant in such amounts as are allowed by law and to be determined at trial, for their actual damages, incidental damages, compensatory damages, consequential damages, pre- and post-judgment interest at the greatest rate allowed by law, for

their costs and reasonable attorneys' fees, and for any such further relief as may be just and proper under the circumstances.

## COUNT FOUR:
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
Plaintiff and All Kansas Sub-Class Members

90.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

91.     The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions.

92.     Plaintiff and the members of the proposed Kansas Sub-Class have been damaged and are "aggrieved" pursuant to the KCPA as a result of Defendant's conduct.

93.     The KCPA should be liberally construed to promote its policy of protecting consumers against suppliers that commit deceptive and unconscionable acts and/or practices. K.S.A. § 50-623; *Williamson v. Amrani*, 283 Kan. 277, 234, 152 P.3d 60, 67 (2007).

94.     Plaintiff and all members of the proposed Kansas Sub-Class are "consumer[(s)]," as defined by K.S.A. § 50-624 (b).

95.     In addition, Plaintiff is a "protected consumer," as that term is defined by K.S.A. § 50-676(g), in that he is a current member of the military.

96.     As "consumer[(s)]", under the KCPA, Plaintiff and each member of the proposed Kansas Sub-Class, by definition, have and had less bargaining power than NTB, a large national seller of automotive parts with over a thousand locations.

97.     NTB is a "supplier," as defined by K.S.A. § 50-624 (l).

98.     Plaintiff's (and the proposed sub-class members') purchase of tires from NTB was a "consumer transaction," as defined by K.S.A. § 50-624 (c).

99.     Plaintiff is authorized to bring this action on a class basis by K.S.A. § 50-634(d).

100.     Pursuant to K.S.A. § 50-634(d)(1), Plaintiff and the members of the proposed Kansas Sub-Class are entitled to recover damages for violations that are "specifically proscribed in K.S.A. §§ 50-626, 50-627 and 50-639."   Specifically, Plaintiff and the members of the proposed Kansas Sub-Class are entitled to recover financial damages for the cost of replacing the failed tires and the diminished value of their tires, which would be without warranty owing to NTB's conduct.

101.     Plaintiff and the members of the proposed Kansas Sub-Class are entitled to recover their costs and reasonable attorneys' fees by K.S.A. § 50-634(e).

102.     Defendant's violations of § 50-626, Deceptive Acts and Practices, include, but are not limited to, the following:

   a.   Representing, knowingly or with reason to know and without a reasonable basis to rely upon, that the tires had uses, benefits, and/or characteristics that they did not, in violation of K.S.A. § 50-626(b)(1)(F) by representing that they had TINs in the purchase invoice paperwork, when in fact those TINs were fictitious;

   b.   Willfully using, in oral and/or written representation(s), exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s), in violation of K.S.A. § 50-626(b)(2) by representing that the tires had TINs in the purchase invoice paperwork, when in fact those TINs were fictitious;

   c.   Willfully failing to state a material fact(s), or the willful concealment, suppression or omission of a material fact(s), in violation of K.S.A. § 50-626(b)(3) by representing that the tires had TINs in the purchase invoice paperwork, when in fact those TINs were fictitious;

   d.   Failing to honor the express written warranties at issue, with knowledge of the use of fictitious TINs, in violation of K.S.A. § 50-626(b)(1)(A), 626(b)(2) and *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 652-54 (Kan. Ct. App. 1987) (affirming district court which held that breach of warranty is a violation of 50-626); and,

18

103.    Defendant's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

    a.  Failing to honor the subject warranties at issue, with knowledge of the use of fictitious TINs, in violation of K.S.A. § 50-627(b)(3);

    b.  Denying the consumer the ability to benefit from any recalls of the tires sold, in violation of K.S.A. § 50-627(b)(3);

    c.  Excluding, modifying, or otherwise attempting to limit either or both the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties, in violation of K.S.A. § 50-627(b)(7);

    d.  Continuing to sell the tires with knowledge of the use of fictitious TINs, thereby taking advantage of the consumer's inability to protect their own interests due to their ignorance of the use of false TINs, in violation of K.S.A. § 50-627(b)(1).

WHEREFORE, Plaintiff, individually and on behalf of all proposed Kansas Sub-Class members, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, for their reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

<u>**COUNT FIVE:**</u>
**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
Plaintiff and All Missouri Sub-Class Members

104.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

105.    The Missouri Merchandising Practices Act, § 407.020 RSMo. et seq. ("MMPA"), prohibits the unfair and deceptive acts and practices in the sale of goods and services in Missouri.

106.     The sale, or alleged sale, of the tires in this case was a "sale" of "merchandise" as defined by the MMPA, and the sale was primarily for personal, family, or household purposes.

107.     Specifically, the MMPA prohibits the use of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and the concealment, suppression, and/or omission of any material fact in connection with the sale and/or advertisement of merchandise in trade or commerce within Missouri.

108.     The sale, or purported sale, of the tires by NTB to Plaintiff was a transaction covered by the MMPA, and the sale was primarily for personal, family, or household purposes.

109.     NTB's sale, or purported sale, of merchandise occurred within the state of Missouri.

110.     NTB's unlawful conduct was committed in connection with the sale, or purported sale, of the tires to Plaintiff.

111.     Pursuant to 15 C.S.R. § 60-8.020, **Unfair Practice in General**, an "unfair practice" is any practice that (A) either (1) offends any public policy as it has been established by the . . . statutes or common law of this state or (2) is unethical, oppressive, or unscrupulous; and (B) represents a risk of, or causes, substantial injury to consumers."

112.     Pursuant to 15 C.F.R. § 60-8.070, **Unilateral Breach of Contract**, "(1) It is an unfair practice for any person in connection with the sale of merchandise to unilaterally breach unambiguous provisions of consumer contracts."

113.     Pursuant to 15 C.S.R. § 60-8.080, **Unconscionable Practices**, "(1) It is an unfair practice for any person in connection with the sale of merchandise to engage in any unconscionable act or practice, or to use any unconscionable contract or contract term."

114.     Pursuant to 15 C.S.R. § 60-8.090, **Illegal Conduct**, "(1) It is an unfair practice for any person in connection with advertisement or sale of merchandise to engage in any method, use or practice that (A) violates state or federal law intended to protect the public; and (B) presents a risk of, or causes, substantial injury to consumers.

115.     Pursuant to 15 C.S.R. § 60-9.010(1)(C), **Definitions**, a material fact is "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, **or** which would be likely to induce a person to manifest his/her assent, **or** which the seller knows would be likely to induce a particular consumer to manifest his/her assent, **or** which would be likely to induce a reasonable consumer to act, respond, or change his/her behavior in any substantial manner." (emphasis added).

116.     Pursuant to 15 C.S.R. § 60-9.020, **Deception in General**, "(1) Deception is any method, act, use, practice, advertisement, or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression."

117.     Pursuant to 15 C.S.R. § 60-9.040, **Fraud in General**, "(1) Fraud includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of legal or equitable duty, trust, or confidence, and are injurious to another or by which an undue or unconscientious advantage over another is obtained."

118.     Pursuant to 15 C.S.R. § 60-9.070, **Misrepresentation in General**, "(1) A misrepresentation is an assertion that is not in accord with the facts."

119.     Pursuant to 15 C.S.R. § 60-9.110, **Concealment, Suppression or Omission of Any Material Fact in General**, "(1) Concealment of a material fact is any method, act, use, or practice which operates to hide or keep material facts from consumers . . . (3) Omission of a

21

material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."

120.    Defendant's conduct as alleged above constituted the act, use, and employment of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, and omission(s) of material fact(s) as described in § 407.020 RSMo. and was therefore a violation of the MMPA.

121.    Defendant, with regard to the aforementioned sale of the tires, is in violation of the MMPA and liable for its unlawful, unfair, and/or deceptive acts and practices, which include but are not limited to:

    a.   Engaging in deception and fraud by misleading Plaintiff into believing the tires purchased had the requisite speed and load rating for the particular purpose that Plaintiff was purchasing them for;

    b.   Engaging in unlawful practice and illegal conduct by not accurately recording the TIN of the tires sold on the invoices given to Plaintiff;

    c.   Representing, knowingly or with reason to know and without a reasonable basis to rely upon, that the tires had uses, benefits, and/or characteristics that they did not by representing that they had TINs in the purchase invoice paperwork that were in fact fictitious;

    d.   Willfully using, in oral and/or written representation(s), exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s) by representing that the tires had TINs in the purchase invoice paperwork that were in fact fictitious;

    e.   Misleading Plaintiff into believing he could redeem the warranty on the tires he purchased from NTB;

    f.   Failing to honor the express written warranties at issue with knowledge of the use of fictitious TINs;

    g.   Denying the consumer the ability to benefit from any recalls of the tires sold; and

    h.   Continuing to sell tires with knowledge of the use of fictitious TINs, taking advantage of the consumer's inability to protect his or her own interests due to his or her ignorance of the use of false TINs.

122.    Pursuant to § 407.025.1, Plaintiff is entitled to recover his actual damages, punitive damages, reasonable attorneys' fees, and equitable relief.

123.    Plaintiff's actual damages include the cost of additional tires when his warranty was denied.

124.    Plaintiff's emotional distress includes, but is not limited to, anger, anxiety, frustration, helplessness, humiliation, nausea, nervousness, panic attacks, sadness, shame, and feelings of worthlessness.

125.    Defendant's conduct was intentional, willful, wanton, reckless, fraudulent, with malice, and/or conformed to a pattern and practice, thereby entitling Plaintiff to the recovery of punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Missouri Sub-Class members, prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, for his costs and reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## COUNT SIX:
### UNJUST ENRICHMENT
Plaintiff and All Class Members

126.　Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

127.　Plaintiff and members of the proposed Class have conferred a measurable benefit on Defendant by purchasing the tires without receiving invoices that *accurately* reflect the TINs of the tires purchased.

128.　Defendant has been unjustly enriched as a result of its wrongful conduct. Defendant was unjustly enriched when it denied the warranty on Plaintiff's tires and caused Plaintiff to purchase additional tires because Defendant had inaccurately recorded the TINs of the tires originally sold to Plaintiff. As a result of this unlawful conduct, Defendant has been and will continue to be unjustly enriched.

129.　Retention of such revenues under these circumstances is unjust and inequitable.

130.　Plaintiff, individually and on behalf of the proposed Class, asks for the cost of tires purchased as a result of a warranty being denied due to the inaccurate recording of the TIN of the tires originally sold paid to Defendant during the Class Period.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, respectfully requests that this Court enter judgment in his favor and against Defendant for his actual damages, punitive damages, pre- and post-judgment interest at the maximum legal rate, and any such other relief as may be just and proper under the circumstances.

## COUNT SEVEN:
## NEGLIGENCE/RES IPSA LOQUITUR
Plaintiff and All Class Members

131.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

132.    Defendant had and has a duty to exercise ordinary care in the marketing and selling of tires, including providing registration cards to consumers with the TINs of tires purchased by those consumers. Defendant's duty arises from its legal obligation under federal law to provide registration cards with certain information to consumers. *See* 49 C.F.R. § 574.8(a). This duty was also created in part by the fact that between Plaintiff and Defendant, Defendant exclusively had the expertise regarding the safety of the tires it sold and the need for the tires to be registered so that their purchasers could be reached in the event of a recall or the purchaser could redeem the warranty if necessary.

133.    Defendant breached that duty to exercise ordinary care by failing to provide accurate information regarding the TINs of tires purchased on the purchaser's invoice.

134.    As a result of Defendant's breach of its duty of care, Plaintiff has been damaged. Specifically, Plaintiff was unable to redeem the warranty on tires purchased from NTB and was forced to purchase new tires. Additionally, tire manufacturers would be unable to contact Plaintiff in the case of a safety recall regarding the purchased tires.

135.    Defendant's conduct was grossly negligent, intentional, willful, wanton, and/or reckless. Defendant knew, or should have known, that providing inaccurate TINs on purchaser invoices was unlawful and causing harm to Plaintiff and the proposed Class members.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, respectfully requests that this Court enter judgment against Defendant for his damages in such

amount as determined by jury, for his actual damages, punitive damages, pre- and post-judgment interest, and any such further amounts as are just and proper under the circumstances.

## COUNT EIGHT:
## NEGLIGENCE PER SE
Plaintiff and All Class Members

136.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

137.    As an independent tire dealer/distributor, Defendant had and has a duty to comply with federal rule 49 C.F.R. § 574.8.

138.    Defendant violated 49 C.F.R. § 574.8 by knowingly or intentionally providing inaccurate information regarding the TINs of the tires sold on the registration forms or the invoices given to purchasers, such as Plaintiff.

139.    Failure to comply with 49 C.F.R. § 574.8 constitutes negligence per se.

140.    Defendant has by its own acts and omissions proximately caused and substantially contributed to damages to Plaintiff by violating federal rules and acting negligently and with reckless disregard for the interest and safety of consumers, as well with reckless disregard for the standards and practices of its own industry.

141.    Plaintiff has suffered and will continue to suffer damages as the proximate result of the failure by Defendant to comply with federal rules.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, respectfully requests that this Court enter judgment against Defendant for his damages in such amount as determined by jury, for his actual damages, punitive damages, pre- and post-judgment interest, and any such further amounts as are just and proper under the circumstances.

**COUNT NINE:**
**INJUNCTIVE RELIEF**
Plaintiff and All Class Members

142.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

143.     As a result of Defendant's actions as alleged herein, Plaintiff and all members of the proposed Classes have suffered—and will continue to suffer—severe and irreparable harm and injury in that the failure of Defendant to provide the accurate TINs of tires sold prevent the Plaintiff and all members of the proposed Class from redeeming warranties on their tires or receiving safety recall notices from the tire manufacturer.

144.     This harm far outweighs any conceivable damage to Defendant that could arise from such injunction.

145.     An injunction, if issued, would be well within the public interest in enforcing consumer protection and safety on the road.

146.     Accordingly, Plaintiff and the members of the proposed Class ask this Court to enter a preliminary and/or permanent injunction, ordering Defendant to remedy the inaccurate recording of the TINs of tires sold on registration forms and invoices immediately to bring Defendant into compliance with 49 C.F.R. § 574.8, now and in the future.

WHEREFORE, Plaintiff, individually and on behalf of all proposed Class members, respectfully requests that this Court enter a preliminary and/or permanent injunction, directing NTB to remedy the inaccurate recording of the TINs of tires sold on registration forms and invoices now and in the future.

**DEMAND FOR JURY TRIAL**

147.     Plaintiff hereby demands a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

148.    Plaintiff hereby designates Kansas City, Kansas as the place for trial.

Respectfully submitted,

*/s/* Bryce. B. Bell
Bryce B. Bell          KS#20866
Mark W. Schmitz      KS#25738
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com