# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARCUS PINKNEY,

    **Plaintiff,**

    v.

TBC CORPORATION and NATIONAL
TIRE AND BATTERY,

    **Defendants.**

Case No. 2:19-cv-02680-HLT

## MEMORANDUM AND ORDER

Plaintiff Marcus Pinkney brings this putative class action against Defendants TBC Corporation ("TBC") and National Tire and Battery ("NTB"), alleging nine different counts relating to tires he purchased from a Kansas store operated by NTB. Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 11. In response, Plaintiff withdraws Counts VII and VIII and opposes the rest of the motion. Plaintiff also moves to strike or, in the alternative, for leave to file a sur-reply, arguing Defendants raised new arguments in the reply. Doc. 16.

After review, the Court denies Plaintiff's request to strike but grants leave to file a sur-reply. The Court considers Plaintiff's proposed sur-reply (Doc. 19) in resolving this motion. As to the motion to dismiss, the Court finds that Plaintiff has withdrawn Counts VII and VIII against both Defendants. The Court also dismisses without prejudice all remaining counts asserted against TBC because Plaintiff fails to allege plausible claims against it. As to NTB, the Court dismisses without prejudice the express warranty portion of Count I and the entirety of Counts V, VI, and

IX. Plaintiff's surviving claims against NTB include the implied warranty portions of Count I and the entirety of Counts II, III, and IV.[1]

## I. BACKGROUND[2]

NTB is an independent tire dealer whose corporate parent is TBC. In November 2016, Plaintiff—who regularly drives long distances in his vehicle while also pulling an RV trailer behind the vehicle—went to an NTB store in Overland Park, Kansas, seeking to purchase new tires. Doc. 1 ¶¶ 26, 31. Because he knew the tires had to be able to withstand the extra strain of hauling the trailer as well as the long miles traveled, he confirmed with the NTB agents before buying anything that the tires he purchased would withstand such stress. *Id.* at ¶¶ 31-32.

Plaintiff ultimately purchased two tires during this November 2016 visit. *Id.* at ¶ 26. The tires were listed in his November 2016 NTB invoice as two Nitto Crosstek SUV tires with a Tire Identification Number ("TIN") of KVARCWM1216 2. *Id.* at ¶ 27. A few months later, in March 2017, Plaintiff purchased an additional set of Nitto Crosstek SUV tires (with the same specifications as the November 2016 tires) from the same NTB store to replace the remaining two tires on his vehicle. *Id.* at ¶¶ 28-29. The invoice for those tires listed a TIN of KVARCWME2616 2. *Id.* at ¶ 29. Included with both Plaintiff's November 2016 invoice and his March 2017 invoice was a written warranty, which—pertinent to the allegations in this case—set forth the terms of NTB's New Tire Limited Warranty, among other warranty terms and conditions. *See* Doc. 11-1.

On June 2, 2017, while traveling out of state, Plaintiff noticed that the tires purchased in the March 2017 transaction were missing chunks of rubber and, further, that the steel belts in the

---

[1] Resolution of this motion was complicated by the complaint and briefing. Although the Court appreciates efforts at brevity, those efforts complicate resolution when the papers lump parties, claims, and arguments together.

[2] For purposes of this motion, the Court accepts as true Plaintiff's well-pleaded factual allegations and bases this background on the pleadings and the undisputed documents referenced in those pleadings.

tires were showing. Doc. 1 ¶ 33. Believing the tires to be under warranty, Plaintiff took his vehicle to the nearest NTB location, which was in St. Louis, Missouri. *Id.* at ¶ 34. The manager at the Missouri NTB looked up Plaintiff's purchase invoice and inspected the tires. *Id.* at ¶ 35. During this inspection, the manager looked at the TINs, which are branded on the sidewalls of the tires. *Id.* at ¶¶ 3, 36. TINs serve several purposes, including to determine whether a particular tire is covered by warranty; if a tire's TIN does not match the TIN on the associated invoice, no warranty claim can be made. *Id.* at ¶ 4.

Here, the manager at the Missouri NTB location ultimately found that the TINs on all four of Plaintiff's tires did not match the TINs on the November 2016 and March 2017 invoices. *Id.* at ¶ 36. The manager informed Plaintiff that, because the TINs did not match, NTB would not honor the written warranty. *Id.* at ¶ 37. Because Plaintiff—who, at the time of the transactions at issue in this lawsuit, was a Kansas resident—was a long way from home, he purchased four new tires (this time, Nitto Crosstek Heavy Duty tires) from the Missouri NTB store. *Id.* at ¶¶ 14, 38-39.

Following this incident, Plaintiff contacted the National Highway Traffic Safety Administration ("NHTSA") in an attempt to understand why the TINs on the tires did not match the TINS on the invoices. *Id.* at ¶ 40. An NHTSA safety specialist told Plaintiff that the TINs on the tires were legitimate but that the TINs on the NTB <u>invoices</u> were, in essence, fictitious. *Id.* at ¶ 41. The safety specialist informed Plaintiff that all Nitto Crosstek tire TINs begin with "73FLKV6" and so the TINs listed on the invoices were not accurate. *Id.* The safety specialist also told Plaintiff that the tires originally sold to him at the Kansas NTB did not have the speed and load rating necessary for Plaintiff's uses and needs. *Id.* at ¶ 42.

Plaintiff proceeded to file this action on November 1, 2019, on behalf of himself and a putative nationwide class and Kansas and Missouri sub-classes. Doc. 1. Plaintiff alleges nine causes of action: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), (2) breach of the implied warranty of merchantability, (3) breach of the implied warranty of fitness for a particular purpose, (4) violations of the Kansas Consumer Protection Act ("KCPA"), (5) violations of the Missouri Merchandising Practices Act ("MMPA"), (6) unjust enrichment, (7) negligence/res ipsa loquitur, (8) negligence per se, and (9) injunctive relief. *Id.* Defendants move to dismiss all nine counts under Rule 12(b)(6), arguing Plaintiff fails to state a claim for relief. Doc. 11. After Defendants replied, Plaintiff filed a motion to strike or to file a sur-reply and filed the proposed sur-reply. Docs. 16, 19; *see also* D. KAN. R. 15.1.

## II. MOTION TO STRIKE

To properly identify the record, the Court starts by resolving Plaintiff's motion to strike or, alternatively, leave to file sur-reply. Doc. 16. Plaintiff contends Defendants inappropriately raised arguments for the first time in their reply and, therefore, the Court should either strike those arguments or permit Plaintiff to file a sur-reply. Generally, a non-moving party should be given an opportunity to respond to argument or evidence offered for the first time in the movant's reply. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). A court may either disregard the new material (i.e., exercise its inherent authority to strike the material) or grant leave to file a sur-reply. *Id.*[3]

---

[3] Plaintiff does not invoke Rule 12(f) and, instead, seems to rely on the Court's inherent powers. Defendants are correct that Rule 12(f) is not an appropriate procedural vehicle for addressing the issue in this case. *See Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1251 (D. Kan. 2017) (denying motion to strike new arguments made in reply brief because "a motion to strike is not the proper procedure"); *see also* FED. R. CIV. P. 12(f) (providing that courts "may strike from a <u>pleading</u> an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter") (emphasis added).

After carefully reviewing the briefs, the Court denies the motion to strike but grants Plaintiff's alternative request for leave to file a sur-reply. The Court deems the proposed sur-reply filed for purposes of the record and this motion. In reaching this decision, the Court does not discern any trickery or attempts to sandbag by Defendants. But it seems there was confusion on the scope of some claims and arguments. To allow Plaintiff a full opportunity to respond to all arguments, to streamline this case by allowing the Court to resolve the presented arguments, and to comply with the purposes of Rule 1, the Court grants Plaintiff's alternative request to file a sur-reply and deems the proposed sur-reply filed.

## III.  MOTION TO DISMISS

Having resolved this preliminary issue and delineating the record before it, the Court turns to the motion to dismiss. Courts will dismiss a cause of action under Rule 12(b)(6) in two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79.

### A.  Claims Against TBC

Plaintiff brings his claims against two defendants in this case: NTB (an independent tire retailer who operates the Kansas and Missouri stores where Plaintiff bought tires and attempted to enforce the warranty) and TBC (NTB's corporate parent). TBC moves to dismiss all claims against

it because Plaintiff fails to allege any plausible basis for its liability. Doc. 11 at 14-15. TBC argues that each of Plaintiff's claims is tied to the purported actions of NTB, not TBC. *Id.*

The Court agrees with TBC. Plaintiff's factual allegations focus on NTB. *See, e.g.*, Doc. 1 ¶¶ 14-42. Plaintiff alleges he bought tires from an NTB location, NTB had a written warranty, the NTB location listed the wrong TINs, the tires were defective, he went to another NTB location to make a claim under NTB's warranty, and NTB refused to honor that warranty. These allegations form the gravamen of Plaintiff's claims. Conversely, Plaintiff's sole factual allegation as to TBC is that TBC is NTB's corporate parent. *Id.* at ¶¶ 15-16. This lone fact does not provide a basis for TBC's liability and falls far short of alleging facially plausible claims.[4] The Court therefore dismisses without prejudice all claims against TBC except Counts VII and VIII (the negligence claims), which Plaintiff withdrew in his opposition.

B.     **Claims Against NTB**

The Court turns to Plaintiff's claims against NTB. In evaluating these claims, the Court focuses on Plaintiff's claims and injuries and not the claims or injuries of unidentified members of a class he purports to represent. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

---

[4]   The Court recognizes that, in footnote 1 to the complaint, Plaintiff avers that "for convenience" the complaint "generally refers to both TBC and NTB collectively as NTB, unless specifically noted." Doc. 1 at 1 n.1. But this does not overcome TBC's arguments for dismissal. First, Plaintiff is inconsistent in how he utilizes this general reference. Throughout his complaint, Plaintiff alternatively refers to "Defendant" (singular), "Defendants" (plural), "Defendant NTB," "NTB," and "TBC," making it difficult to discern exactly whom Plaintiff is referencing at each point. Second, this general statement does not change the fact that nearly all of Plaintiff's factual allegations are specific to NTB. Third, although Plaintiff argues in the sur-reply that the express warranty indicates that "TBC Retail" will honor the warranty, the contract defines "TBC Retail" in a way that includes NTB and does not include TBC.

1. **MMWA Claim (Count I)**

Plaintiff's first claim is for violation of the MMWA. Plaintiff contends NTB violated the MMWA when it used "fictitious TINs" on its purchase invoices to circumvent both written and implied warranties. Doc. 1 ¶¶ 61-62. Thus, Plaintiff's MMWA claim has two components: (1) breach of an express written warranty, and (2) breach of implied warranties. *See* Doc. 13 at 7-9.

The Court first addresses the express warranty component. To state a claim for MMWA breach of express warranty, Plaintiff must allege that NTB "failed to perform its obligation to 'repair or replace' a warranted defect." *See Greene v. BMW of N. Am.*, 2012 WL 5986461, at *4 (D.N.J. 2012). The only portion of NTB's written warranty identified in the complaint is the New Tire Limited Warranty, which provides:

> Every new tire purchased at [an] . . . NTB . . . store . . . is warranted by the manufacturer against defects in workmanship or materials down to 2/32nds of an inch remaining tread groove depth. Additional warranties may apply to some tires. [NTB] will honor the manufacturer's warranty on any such tires, and any such tires which fail under the terms of the manufacturer's warranty will be repaired or replaced in accordance with the manufacturer's warranty program. You must comply with the conditions of the manufacturer's warranty program to receive this warranty coverage.

Doc. 1 ¶ 23; *see also* Doc. 11-1 at 5, 7. Plaintiff ostensibly contends that NTB breached this written warranty. NTB moves to dismiss the express warranty portion of this claim because Plaintiff fails to allege that any defect in the tires fell within the warranty's scope. Doc. 11 at 6; Doc. 14 at 3 (arguing the complaint "contains no facts regarding the nature of the alleged defect in the tires"). Essentially, NTB argues that Plaintiff fails to sufficiently allege a breach.[5]

---

[5] The Court acknowledges Plaintiff's objection that this argument was raised for the first time in NTB's reply. However, it was—again, very briefly—discussed in NTB's motion, although across various claims. The Court attributes any confusion to a lack of precision across all pleadings, including the complaint. Further, as explained

The Court agrees with NTB. In the complaint, Plaintiff alleges that he purchased two tires in November 2016 and two tires in March 2017. Doc. 1 ¶¶ 26, 28. In June 2017, Plaintiff noticed that the tires he purchased in March "were missing chunks of rubber" and, further, that the tire's "steel belts . . . were showing." *Id.* at ¶ 33. Believing the tires to be under warranty, he took them to an NTB store in Missouri, but NTB told Plaintiff it would not honor the written warranty because the TINs on the tires and the TINs listed on the associated invoices did not match. *Id.* at ¶¶ 34, 36-37.

But these allegations do not sufficiently allege a breach of the written warranty because, simply put, Plaintiff does not allege that the issues with the tires fell within the terms of that warranty. Specifically, Plaintiff does not allege that the "missing chunks of tire" and exposed steel belts were the result of a "defect in workmanship and materials." Nor does Plaintiff allege that the tires fell within the "2/32nds of an inch remaining tread groove depth" limitation. It is <u>possible</u> that the problems with the tires were caused by manufacturing defects and that the tires maintained a suitable tire groove depth so as to fall within the scope of the warranty. But it is <u>equally possible</u> that the issues with Plaintiff's tires could have been caused by unfavorable road conditions, aggressive driving, potholes, suspension problems, heat-related issues, or the like.

Because he has not plausibly alleged that the damage to the tires fell within the terms of the written warranty, Plaintiff has not adequately stated a breach of express warranty claim. In making this ruling, the Court notes that it is not attempting to make Plaintiff prove his claim at the pleading stage. But, without these allegations in this case, Plaintiff fails to nudge his claim from a mere possibility to a plausibility. *See Greene*, 2012 WL 5986461, at *4 (finding that the plaintiff

---

in Part II, *supra*, the Court has permitted Plaintiff to file a sur-reply and has discerned no attempts by NTB to sandbag Plaintiff. It therefore considers this argument.

failed to state a claim for MMWA breach of express warranty when the applicable warranty required the plaintiff to bring his tires to an "authorized Bridgestone Firestone retailer" for service and the plaintiff failed to allege that he ever brought his tires to an authorized retailer because the plaintiff "[did] not allege that Bridgestone failed to satisfy its obligations" under the warranty). Thus, the Court dismisses without prejudice the express warranty portions of Plaintiff's MMWA claim.[6] But the implied warranty portions of Plaintiff's MMWA claim withstand dismissal, as fully discussed in the Court's analysis of Counts II and III, below.

### 2. Implied Warranty Claims (Counts II & III)

In Counts II and III, Plaintiff asserts claims for breach of the implied warranties of merchantability and fitness for a particular purpose. NTB contends these claims must be dismissed because NTB effectively disclaimed all implied warranties.[7] Doc. 11 at 5-6. The contractual language referenced by NTB in connection with this argument is the written warranty's "Disclaimer of Warranties and Limitation of Damages" provision, which provides in pertinent part:

> Except as described herein, [NTB] makes no express or implied warranty **whatsoever** with respect to tires, maintenance or repair work, and **EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**.

Doc. 11-1 at 5, 7 (emphasis in original). In response, Plaintiff argues that Kansas law precludes NTB from disclaiming the asserted implied warranties. Doc. 13 at 5-7.

---

[6] Because the Court concludes Plaintiff has failed to adequately plead a breach of express warranty, it does not reach the other arguments raised as to this claim.

[7] In its reply, NTB vaguely argues that Plaintiff's implied warranty claims are also deficient "for some of the same reasons" as his express warranty claim. Doc. 14 at 3. But this vague statement is not sufficient to properly raise this argument with the Court.

The Court agrees with Plaintiff. Kansas law prevents such disclaimers. *See* K.S.A. § 50-639(a)(1) (stating that "with respect to property which is the subject of . . . a consumer transaction in this state, no supplier shall . . . [e]xclude, modify or otherwise attempt to limit the implied warranties of merchantability . . . and fitness for a particular purpose"). Indeed, in its reply, NTB seems to tacitly concede that Plaintiff's implied warranty claims survive as to any Kansas transactions. Doc. 14 at 1-2. The Court therefore denies NTB's motion to dismiss for these counts.[8]

### 3. Consumer Protection Claims (Counts IV & V)

Plaintiff next asserts claims under the Kansas and Missouri consumer protection statutes—the KCPA and the MMPA, respectively. NTB argues that these claims are subject to Rule 9's heightened pleading standard and fail because Plaintiff does not adequately allege the nature of the purported defects in his tires and that such defects would have been covered by an applicable warranty. Doc. 11 at 6-7. NTB also argues that Plaintiff's MMPA claim additionally fails because Plaintiff is not a Missouri resident and does not assert any unfair or deceptive act occurring in Missouri. *Id.* at 8.

The Court begins with Plaintiff's MMPA claim (Count V) and agrees that this claim must be dismissed because Plaintiff fails to allege that any unfair or deceptive act or practice occurred in Missouri. By its terms, the MMPA applies to "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . <u>in or from the state of Missouri</u>." Mo. Rev. Stat. § 407.020.1 (emphasis added). Here, none of the allegedly fraudulent or deceptive actions that form the basis of Plaintiff's MMPA claim

---

[8] The parties banter about the impact of K.S.A. § 50-639(a)(1) on disclaimer for the proposed nationwide class and Missouri sub-class. But that issue is not currently before the Court.

occurred in or originated from Missouri. Rather, the allegations forming the basis of Plaintiff's consumer protection claims—i.e., that he purchased tires from the Kansas NTB store and that the NTB agents misled him into believing the tires met the specifications he was looking for, and, further, used fictious TINs on the invoices in order to circumvent warranties—involve conduct occurring in and originating from Kansas. And the MMPA does not cover allegedly deceptive conduct occurring in and originating from Kansas.[9] Because the acts of commerce that Plaintiff grieves did not occur in or originate from Missouri, Plaintiff's MMPA claim is dismissed without prejudice.

Turning to the KCPA claim (Count IV), this claim is premised on K.S.A. §§ 50-626 and 50-627, which prohibit suppliers from engaging in deceptive and unconscionable acts in connection with consumer transactions. *See* Doc. 1 ¶¶ 102-103. The parties devote significant briefing to the issue of whether Rule 9(b) applies to this claim. Under this Rule, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) (emphasis added).

After a careful review, the Court concludes that Plaintiff's allegations under the KCPA sound in fraud and, thus, are subject to Rule 9(b)'s heightened pleading standard and must be pleaded with particularity. *See, e.g.*, *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) (applying Rule 9(b) pleading standard in case involving KCPA claim premised on K.S.A §§ 50-626 and 50-627); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995) (noting that "Kansas courts have recognized that the actions upon which a consumer may establish liability under the [KCPA] sound largely in fraud" and concluding that

---

[9] In making this holding, the Court does not reach NTB's argument that Plaintiff's MMPA claim cannot stand because Plaintiff is not a Missouri resident.

"allegations of deceptive trade practices under the KCPA are subject to Rule 9(b)'s requirement of particularity"); *Cavlovic v. J.C. Penney Corp.*, 2018 WL 2926433, at *2 (D. Kan. 2018) (same). Therefore, to survive the motion to dismiss, Plaintiff's complaint must set forth the time, place, and content of the alleged wrongful conduct, the identities of the wrongdoers, and the harm caused. *See Gonzalez*, 489 F. Supp. 2d at 1247.

The Court finds Plaintiff meets this standard. Plaintiff has alleged that, at the NTB location in Kansas where he purchased his tires on specific dates, NTB, through its employees, falsely informed him his tires were appropriate for his stated use when they were not, and recorded the incorrect TINs on his invoices that resulted in him being denied access to the warranties that he purchased with the tires.[10] NTB argues that, as to the latter argument, Plaintiff must allege with particularity that his tires had a defect that was covered by the relevant warranties in order to plead this claim. The Court disagrees. Although this may impact damages, the harm in the KCPA claim is complete before and regardless of whether any defect in the tire ever materializes. In other words, Plaintiff was allegedly harmed when NTB's allegedly deceptive act of recording false TINs denied him the benefit of his bargain. In sum, the Court grants NTB's motion to dismiss as it

---

[10] The Court acknowledges that Plaintiff's complaint on this claim is not a model of clarity. Count IV alleges violations of the KCPA in various ways, including "[r]epresenting . . . that the tires had uses, benefits, and/or characteristics that they did not," "[f]ailing to honor the express written warranties," "[f]ailing to honor the subject warranties at issue," and "taking advantage of the consumer's inability to protect their own interests." *See* Doc. 1 at ¶¶ 102-103. Most of these allegations refer to "fictious TINs." *Id.* If Plaintiff is attempting to argue that breaching the express warranty is itself a violation of the KCPA, then that allegation fails and is dismissed without prejudice for generally the same reasons discussed in Part III.B.1, above, in connection with Plaintiff's MMWA breach of express warranty claim. Certainly, if similar allegations could not survive the more liberal pleading standard in Rule 8, they likewise fail the heightened standard in Rule 9. But the Court believes that, as pleaded, the claim in Count IV is distinct from the allegation discussed above because the gravamen of this claim is that NTB's allegedly deceptive conduct denied Plaintiff access to any warranties altogether. Plaintiff need not plead the details of any defect because the harm in the latter situation is in the denial of the warranty altogether as a result of the fictitious TINs, not the breach.

pertains to Plaintiff's MMPA claim. That claim is dismissed without prejudice. But the Court denies NTB's motion as to Plaintiff's KCPA claim.[11]

### 4. Unjust Enrichment (Count VI)

The Court next addresses Plaintiff's unjust enrichment claim (Count VI). NTB advances two arguments for dismissal. First, NTB contends that Plaintiff does not state a claim for unjust enrichment because a valid written agreement (the written warranty) exists between the parties. Doc. 11 at 8-9. Second, NTB argues that this claim cannot stand because Plaintiff has an adequate remedy at law. *Id.* at 10.

In response, Plaintiff addresses the first argument but not the second. Doc. 13 at 13-14. By not responding to this issue, Plaintiff appears to implicitly concede the merits of this argument. And the Court likewise finds that NTB's second argument entitles it to dismissal without prejudice of this claim. Recovery on Plaintiff's claim for unjust enrichment is only available to the extent there is no adequate remedy at law. *See Switzer v. Coan*, 261 F.3d 985, 991 (10th Cir. 2001) ("[T]his court . . . has repeatedly applied the general rule that equitable relief is available only in the absence of adequate remedies at law."). Here, Plaintiff fails to plead the absence of an adequate remedy at law, and nothing in the complaint or arguments of the parties indicates that such a situation exists. This warrants dismissal of this claim. *See, e.g.*, *Shafer, Kline & Warren, Inc. v. The Allen Grp.-Kan. City, LLC*, 2014 WL 1974525, at *2 (D. Kan. 2014) (dismissing the plaintiff's unjust enrichment claim and recognizing that "equitable remedies are not available if there is an adequate remedy at law"); *McFarland v. Stratford Commons Rehab. & Health Care Ctr., LLC*, 2017 WL 4776960, at *2 (D. Kan. 2017) (dismissing quantum meruit claim where the plaintiff did

---

[11] Although the Court finds that portions of Count I and the entirety of Counts II-IV survive this motion, the Court expresses no opinion as to whether these claims are amenable to class certification given the potentially pesky issues of reliance inherent in some (if not all) of these claims.

not plead "any facts . . . that would entitle her to additional relief" beyond what was already available). For these reasons, the Court grants NTB's motion as to Count VI and dismisses Plaintiff's claim for unjust enrichment without prejudice.

     **5.**    **Negligence Claims (Counts VII & VIII)**

The Court next turns to Plaintiff's negligence claims in Count VII (negligence/res ipsa loquitur) and Count VIII (negligence per se). NTB argues that the Court should dismiss these claims for three reasons: (1) the claims are barred by the applicable statute of limitations; (2) there is no private right of action under 49 C.F.R. § 574.8 (the regulation upon which Plaintiff's negligence claims are based); and (3) Plaintiff fails to allege sufficient facts to state a claim for relief. Doc. 11 at 10-14. In response, Plaintiff withdraws these claims. And Defendants do not oppose the withdrawal (or request dismissal with prejudice). Thus, the Court finds Counts VII and VIII are withdrawn.

     **6.**    **Injunctive Relief (Count IX)**

Finally, the Court addresses Count IX, via which Plaintiff purports to assert a claim for injunctive relief. But injunctive relief is a remedy, not an independent cause of action. *See Evangelical Lutheran Good Samaritan Soc'y, Inc. v. Randol*, 2017 WL 3085778, at *2 (D. Kan. 2017) (dismissing claim for "temporary and permanent injunctive relief" because it "fail[ed] to state an independent cause of action" and "is best characterized as plaintiffs' prayer for relief"). Thus, although the Court—and, it appears, the parties—recognize that Plaintiff seeks injunctive relief as a remedy in this case (to the extent it is available), this count cannot stand as a separate claim and must be dismissed. The Court therefore grants NTB's motion as to Count IX and dismisses Plaintiff's claim for injunctive relief without prejudice.

**IV. CONCLUSION**

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss (Doc. 11) is GRANTED IN PART and DENIED IN PART. Counts VII and VIII are WITHDRAWN. All remaining claims against TBC are DISMISSED WITHOUT PREJUDICE. As to NTB, the express warranty provisions of Count I and the entirety of Counts V, VI, and IX are DISMISSED WITHOUT PREJUDICE. Plaintiff's surviving claims against NTB include the implied warranty portions of Count I and the entirety of Counts II, III, and IV.

THE COURT FURTHER ORDERS that Plaintiff's Motion to Strike or, in the Alternative, for Leave to File Sur-Reply (Doc. 16) is GRANTED. The Court deems Plaintiff's proposed sur-reply (Doc. 19) to be FILED and considers it to be part of the record in this case.

IT IS SO ORDERED.

Dated: March 31, 2020 /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE